IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

| | | |
|---|---|---|
| **CHRISTINA CREAMER,** | § § § | |
| *Plaintiff,* | § § | **CIVIL ACTION NO. 3:21-cv-03024-TLB** |
| **V.** | § § § | **JURY TRIAL DEMANDED** |
| | § § | |
| **BOONE COUNTY, ARKANSAS;** | § | |
| **JASON DAY, Individually, and in his** | § | |
| **official capacity as Jail Administrator** | § | |
| **of Boone County Jail; TIM ROBERSON,** | § | |
| **Individually, and in his official capacity as** | § | |
| **as Sheriff of Boone County, Arkansas;** | § | |
| **TURN KEY HEALTH CLINICS LLC;** | § | |
| **TURN KEY HEALTH MEDICAL** | § | |
| **ARKANSAS PLLC and JANE AND JOHN** | § | |
| **JOHN DOES I-V** | § § | |
| *Defendants.* | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Comes now the Plaintiff, Christina Creamer, by and through her attorneys, The Buzbee Law Firm and Langdon✷Davis L.L.P., and for her Complaint against the Defendants, states and alleges as follows:

**I.   INTRODUCTION**

1. This case alleges Boone County Jail (hereafter known as "BCJ") and its officers and employees acted in violation of 42 U.S.C. § 1983 in the unconstitutional treatment leading to the amputation of Plaintiff's leg and other injuries, a former inmate at BCJ.

2. Plaintiff also alleges medical malpractice and negligence by Turn Key Health Clinics LLC and Turn Key Health Medical Arkansas PLLC (hereafter known as "Turn Key") and

1

its agents and employees in the care provided to Christina Creamer while she was incarcerated at BCJ.

## II. PARTIES

3. Christina Creamer is a resident of Boone County, Arkansas.

4. Defendant Boone County, Arkansas is a duly organized political subdivision of the State of Arkansas, which, exercising powers conferred upon it by the State of Arkansas is responsible for the acts and practices of Boone County Jail and is also responsible for the acts and omissions of its officers and employees. Defendant Boone County, Arkansas has been served and appeared in this cause by and through its attorney of record as indicated below.

5. Defendant Jason Day is and was at all times relevant hereto employed as the Jail Administrator at BCJ. Defendant Jason Day has been served and appeared in this cause by and through his attorney of record as indicated below.

6. Defendant Tim Roberson is and was at all times relevant hereto the Sheriff of Boone County, Arkansas. Defendant Tim Roberson has been served and appeared in this cause by and through his attorney of record as indicated below.

7. Defendant Turn Key Health Clinics LLC is a for-profit corporation licensed to do business in the State of Arkansas and may be served through its registered agent, Incorp Services, Inc., 4250 Venetian Lane, Fayetteville, Arkansas 72703.

8. Defendant Turn Key Health Medical Arkansas PLLC is a for-profit corporation licensed to do business in the State of Arkansas and may be served through its registered agent, CT Corporation System, 124 West Capitol Avenue, Little Rock, Arkansas 72201.

9. John and Jane Does I-V are employees and/or officers of BCJ or Turn Key who participated in, acted, or acted through omission against Christina Creamer in the cause of her injuries at BCJ.

### III. ACTS OF AGENTS

10. In this Complaint, whenever it is alleged that any of the Defendants did any act or failed to act, it is meant that the particular Defendant referred to, either personally or through his/her/its respective employees, representatives or agents, did such act or failed to act, and that, at the time of such act or omission, that act or omission occurred in the ordinary course and scope of employment for that Defendant's employees, representatives or agents. Accordingly, Defendants, to the extent each would act or fail to act through as employee, representative or agent, remain responsible for those acts or omissions by virtue of the doctrine of *respondeat superior*.

### IV. JURISDICTION AND VENUE

11. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the Constitution of the United States. Plaintiff also brings state causes of action under Arkansas Code Annotated § 16-114-201, et seq., as well as common-law doctrines of negligence.

12. This Court has jurisdiction over state law claims and concurrent jurisdiction over 42 U.S.C. § 1983 claims as explained and decided in *Haywood v. Drown,* 556 U.S. 729 (2009).

13. Venue is proper as the acts alleged of occurred in Boone County, Arkansas.

### V. FACTUAL ALLEGATIONS

14. Upon information and belief, Turn Key provided the medical staffing for BCJ during all relevant periods of time alleged herein.

15. On December 30, 2019, Christina Creamer was arrested for a probation violation.

16. On December 31, 2019, Christina Creamer commenced her jail sentence at BCJ.

17. Ms. Creamer had Type 2 Diabetes which she had sought treatment for over the majority of her life. Ms. Creamer was prescribed and had to take prescription medication every day for her Type 2 Diabetes. Her family would visit her at the jail and bring her the medication for her diabetes.

18. Ms. Creamer's diabetes was documented in her intake forms at BCJ.

19. Defendants, including the officers and employees of BCJ, and medical staff employed by Turn Key knew of Christina Creamer's diabetic health condition and knew that Ms. Creamer's health was exclusively under their care and control while she was imprisoned at BCJ.

21. On January 4, 2020, Plaintiff broke her ankle when she slipped on some water in her cell after she mopped the floors.

22. Having knowledge of Plaintiff's diabetes, Defendants would have known that a diabetic patient who suffers a broken ankle is highly susceptible to an infection and eventual amputation if not treated in a timely manner. Diabetic patients are at higher risk than the average person for infections and/or foot ulcers as a result of broken bones.

23. Two days after Plaintiff suffered an injury, she told the prison guards that she was in terrible pain as her foot started to swell and she could not get out of bed. It is well known and documented that swelling in a diabetic patient is a red flag that a serious injury has occurred and treatment is needed.

24. Plaintiff saw the nurse on staff at the jail employed by Turn Key for her pain. Plaintiff told the nurse she was in excruciating pain. Her ankle had become fully swollen by this point.

25. The Turn Key nurse failed to properly diagnose the injury and gave Tylenol to Plaintiff for the pain.

26. Plaintiff kept pleading with the staff to go to the emergency room as the pain was excruciating and Plaintiff had difficulty walking on the foot. Defendants refused to honor her request. The swelling and pain continued to worsen.

27. Plaintiff continued to complain of pain and continued to plead with the Defendants to send her to the emergency room. Defendants once again failed to honor her request.

28. Plaintiff saw the nurse on staff again at the jail who once again gave her antibiotics for the pain. **No doctor ever treated Plaintiff.**

29. On March 6, 2020, Plaintiff concluded her sentence at the jail and was released.

30. Afterwards, Plaintiff went to North Arkansas Regional Medical Center in Harrison, Arkansas where she was examined by an orthopedic surgeon, Dr. Tarik Sidani. By this time, Plaintiff had developed an infection and an ulcer in her foot which was well advanced. As a result, the hospital had to perform an amputation of Plaintiff's leg due to the infection. Dr. Justin L. Cutler performed the amputation.

31. This amputation was entirely preventable and would not have occurred but for BCJ's deliberate indifference and Turn Key's negligence.

## VI. HISTORY OF MEDICAL MALPRACTICE AND NEGLIGENCE BY TURN KEY

32. This incident is not the first time a lawsuit has been filed against Turn Key and the respective jails for failure to provide proper medical care to inmates. In fact, Turn Key is notorious for this type of conduct, having been the subject of litigation previously.

33. For instance, in June 2016, a nurse who worked for Turn Key at Garfield County Jail in Oklahoma allegedly did nothing to intervene while a hallucinating man was kept in a

restraint chair for more than 48 hours. That man, Anthony Huff, ultimately died restrained in the chair.

34.     An El Reno man died in 2016 after being found naked, unconscious and covered in his own waste in a cell at Canadian County Oklahoma Detention Center, while ostensibly under the care of Turn Key medical staff. The Office of the Chief Medical Examiner found the man had experienced a seizure in the days before his death.

35.     A man in Creek County Oklahoma Jail, also under the purported "care" of Turn Key, died in September 2016 from a blood clot in his lungs after his repeated complaints -- over several days -- of breathing problems were disregarded by responsible staff, and he lost consciousness.

36.     A man named Reginald Davis in a Pulaski County, Arkansas jail filed a lawsuit against the county and Turn Key after he received a dose of the wrong kind of insulin while incarcerated in 2017. Davis became lightheaded as a result, and then fell and broke his ankle, leading to an infection that required the amputation of his right leg.

37.     Another man, Michael Edwin Smith, encountered deliberate indifference to his serious medical needs at Muskogee County Oklahoma Jail in the summer of 2016. Mr. Smith became permanently paralyzed when the jail staff failed to provide him medical treatment after he repeatedly complained of severe pain in his back and chest, as well as numbness and tingling. Smith claims that cancer spread to his spine, causing a dangerous spinal compression, a condition that can cause permanent paralysis if left untreated. Smith asserts that he told the Turn Key-employed physician at the jail that he was paralyzed, but the physician laughed at Smith and told him he was faking. For a week before he was able to bond out of the jail, Smith was kept in an isolation cell on his back, paralyzed, unable to walk, bathe himself or use the bathroom on his own.

He lay in his own urine and feces because the jail staff told Smith he was faking paralysis and refused to help him.

38. A woman in an Arkansas jail in Pulaski County, under the purported "care" of Turn Key, died of severe asthma exacerbation in December 2016 when Turn Key staff and the jail staff repeatedly refused to provide the woman with her inhaler even though Turn Key knew she suffered from asthma.

39. In November of 2016, Muskogee County Jail and Turn Key staff disregarded, for days, the complaints and medical history of inmate James Douglas Buchanan. As noted by Clinton Baird, M.D., a spinal surgeon,

> [Mr. Buchanan] is a 54-year-old gentleman who had a very complicated history… [H]e was involved in being struck by a car while riding bicycle several weeks ago. … ***He ended up finding himself in jail and it was during this time in jail that he had very significant clinical deterioration in his neurologic status. [I]t is obvious that he likely developed the beginnings of cervical epidural abscess infection*** in result of his critical illness [and] hospitalization, but then ***while in <u>jail</u>, he deteriorated significantly and his <u>clinical deterioration</u> <u>went</u> <u>unrecognized</u> and <u>untreated</u> until he was nearly completely quadriplegic.***

40. Above is just a glimpse into Turn Key's negligence and eventual catastrophic results. Turn Key must be held accountable for its actions or lack thereof.

### VII.   CAUSES OF ACTION

COUNT I – DUE PROCESS VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

41. The above paragraphs are hereby restated and alleged as if fully incorporated herein.

42. Defendants Boone County, Arkansas; Jason Day; Tim Roberson; and Jane and John Does I-V, violated Christina Creamer's constitutional rights to due process under the Fourteenth Amendment to the United States Constitution.

43. Defendants' actions and omissions violating Christina Creamer's constitutional rights were performed under the color of the law and pursuant to state authority giving rise to a violation of 42 U.S.C. § 1983.

44. Defendants, acting under the color of state law and pursuant to state authority, had a duty to protect Christina Creamer's constitutional rights and to be secure in her life and person while confined by Defendants.

45. Defendant officers and employees of BCJ at all times pertinent hereto were acting in accordance with BCJ policy, practices, training and procedures.

46. Defendants had a duty to protect Christina Creamer against deliberate indifference to her serious medical need.

47. Defendants knew of Christina Creamer's serious medical need and that their action or inaction could cause her substantial harm.

48. Defendants failed their duty to Christina Creamer by:

    a. Not providing adequate or appropriate medical care;

    b. Failing to properly diagnose her injuries;

    c. Failing to admit her to the emergency room;

    d. Acting with deliberate indifference, willfulness, and recklessness for her medical needs; and

    e. Through their acts and omissions failed to protect her rights to due process under the United States Constitution.

49. As a result of Defendants' conduct, Christina Creamer endured unnecessary pain and suffering for the duration of her confinement at BCJ and lost her leg as a result of the acts and omissions by Defendants.

## COUNT II – CRUEL AND UNUSUAL PUNISHMENT VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

50. The above paragraphs are hereby restated and alleged as if fully incorporated herein.

51. Defendants Boone County, Arkansas; Jason Day; Tim Roberson; and Jane and John Does I-V, violated Christina Creamer's constitutional right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

52. Defendants' actions and omissions violating Christina Creamer's constitutional rights were performed under the color of the law and pursuant to state authority giving rise to a violation of 42 U.S.C. § 1983.

53. Defendants, acting under the color of state law and pursuant to state authority had a duty to protect Christina Creamer's constitutional rights and ensure she was not subjected to cruel and unusual punishment.

54. Defendant officer and employees of BCJ at all times pertinent hereto were acting in accordance with BCJ policy, practices, training and procedures.

55. Defendants had a duty to protect Christina Creamer against deliberate indifference to her serious medical need.

56. Defendants knew of Christina Creamer's serious medical need and that their action or inaction could cause her substantial harm.

57. Defendants failed their duty to Christina Creamer by:

    a. Not providing adequate or appropriate medical care;

    b. Failing to properly diagnose her injuries;

    c. Failing to provide her safe confinement while under state control;

    d. Acting with deliberate indifference, willfulness, and recklessness for her

        medical needs; and

    e.    Through their acts and omissions failed to protect her right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

58.    As a result of Defendants' conduct, Christina Creamer endured unnecessary pain and suffering for the duration of her confinement at BCJ and lost her leg as a result of the acts and omissions by Defendants.

## COUNT III – EQUAL PROTECTION VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

59.    The above paragraphs are hereby restated and alleged as if fully incorporated herein.

60.    Defendants Boone County, Arkansas; Jason Day; Tim Roberson; and Jane and John Does I-V, violated Christina Creamer's constitutional right to equal protection under the Fourteenth Amendment to the United States Constitution.

61.    Defendants' actions and omissions violating Christina Creamer's constitutional rights were performed under the color of the law and pursuant to state authority giving rise to a violation of 42 U.S.C § 1983.

62.    Defendant officer and employees of BCJ at all times pertinent hereto were acting in accordance with BCJ policy, practices, training, and procedures.

63.    Defendants, acting under the color of state law and pursuant to state authority, had a duty to protect Christina Creamer's constitutional rights and right to equal protection.

64.    Defendants knew of Christina Creamer's serious medical need and that their conduct could cause her substantial harm.

65.    Defendants failed their duty to Christina Creamer by:

    a.    Not providing adequate or appropriate medical care;

    b.    Failing to properly diagnose her injuries;

    c.    Failing to admit her to the emergency room;

    d.    Failing to provide safe confinement while under state control;

    e.    Acting with deliberate indifference, willfulness, and recklessness for her medical needs; and

    f.    Upon information and belief, through their acts and omissions failed to provide the medical treatment accorded to similarly situated citizens.

66.    As a result of Defendants' conduct, Christina Creamer endured unnecessary pain and suffering for the duration of her confinement at BCJ and lost her leg as a result of the acts and omissions by Defendants.

## COUNT IV – MEDICAL MALPRACTICE

67.    The above paragraphs are hereby restated and alleged as if fully incorporated herein.

68.    Defendant Turn Key and Jane and John Does I-V had a duty to provide an appropriate standard of professional care with respect to their treatment of inmates at BCJ, including Christina Creamer.

69.    Defendants breached this duty to Christina Creamer by:

    a.    Failing to provide adequate medical care;

    b.    Failing to provide the adequate standard of medical care;

    c.    Failing to apply with reasonable care the degree of skill and learning

                ordinarily possessed and used by members of their profession in good standing engaged in the same type of service in the same or similar locality in which they treat patients; and

      d.     Failing to monitor, follow-up and check on her when they knew of her serious medical condition and need.

70.     As a result of Defendants' conduct, Christina Creamer endured bodily harm, and unnecessary pain and suffering for the duration of her confinement at BCJ and lost a leg as a result of the acts and omissions by Defendants.

71.     Defendants are guilty of medical malpractice which was the proximate cause of Christina Creamer's bodily harm, pain, suffering and injuries.

## COUNT V – NEGLIGENCE

72.     The above paragraphs are hereby restated and alleged as if fully incorporated herein.

73.     Defendants had a duty to reasonably ensure and provide adequate and necessary medical care to inmates at the BCJ, including Christina Creamer.

74.     Defendants breached this duty to Christina Creamer by:

      a.     Failing to provide adequate medical care;

      b.     Failing to provide the adequate standard of medical care;

      c.     Failing to apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of their profession in good standing engaged in the same type of service in the same or similar locality in which they treat patients.

    d.    Failing to monitor, follow-up, and check on her when they knew of her serious medical condition and need;

    e.    Failing to provide adequate medical staff or employees at the BCJ;

    f.    Failing to provide or ensure adequate training or supervision of medical staff and employees at the BCJ; and

    g.    Negligently supervising or retaining medical staff and employees at the BCJ.

75. As a direct and proximate result of Defendants' conduct, Christina Creamer endured bodily harm, unnecessary pain and suffering for the duration of her confinement at BCJ, lost her leg, and suffered other injuries as a result of the negligent acts and omissions of Defendants.

76. Defendants are guilty of negligence which was the cause of Christina Creamer's bodily injury, pain and suffering.

## COUNT VI – NEGLIGENT HIRING, SUPERVISION, AND RETENTION

77. The above paragraphs are hereby restated and alleged as if fully incorporated herein.

78. Defendants owed the general public, including Christina Creamer, a continuing duty to investigate and monitor their employees, agents or representatives' abilities, fitness, and qualifications. In addition, Defendants had a duty to properly hire and retain employees, agents, or representatives; a duty to properly supervise, train and direct their employees, agents, or representatives; and a duty to implement proper policies, practices, training, and procedures related to medical needs of persons, including Christina Creamer.

79. Upon information and belief, Defendants breached their duty of care and were negligent in at least the following respects:

    a. Failing to determine that Defendants' employees, agents, or representatives lacked the requisite abilities, fitness, and qualifications to care for medical needs of persons, including Christina Creamer, at the time of their employment;

    b. Failing to have policies and/or procedures in place to prevent Defendants' employees, agents, or representatives in place to care for medical needs of persons, including Christina Creamer;

    c. Failed to provide adequate and sufficient training to Defendants' employees, agents, or representatives such that they could obtain the requisite abilities, fitness, and qualifications to care for medical needs of persons, including Christina Creamer;

    d. Failed to determine that Defendants' employees, agents, or representatives lacked the requisite abilities, fitness, and qualifications to care for medical needs of persons, including Christina Creamer, between the time of their first employment and the subject incident causing serious injury to Christina Creamer;

    e. Defendants entrusted and allowed its employees, agents, or representatives to monitor, follow-up, and check on the serious medical condition of Christina Creamer at a time when it knew, of should have known, that they lacked the requisite abilities, fitness, and qualifications to safely monitor, follow-up, or check on the medical needs of Christina Creamer.

80. As a direct and proximate result of Defendants' conduct, Christina Creamer endured bodily harm, unnecessary pain and suffering for the duration of her confinement at BCJ, and lost a leg and suffered other injuries as a result of the negligent acts and omissions of Defendants.

## VIII.  DAMAGES

81. The above paragraphs are hereby restated and alleged as if fully incorporated herein.

82. That as a result of Defendants' conduct, acts, and omissions Christina Creamer was damaged as follows:

   a. She suffered severe bodily harm that resulted in injuries, including amputation;

   b. She endured unnecessary pain, suffering and mental anguish in the past;

   c. She will endure unnecessary pain, suffering and mental anguish in the future;

   d. Her disfigurement resulting from the amputation;

   e. The reasonable expenses of necessary medical care, treatment and services received, and those expenses necessarily incurred in securing such care, treatment, or services in the past, and those reasonably certain to be required in the future;

   f. Her loss of earnings in the past and those reasonably certain to be lost in the future;

   g. Her loss of earning capacity in the future;

   h. Court costs; and

     i.  Pre-judgement and post-judgment interest as allowed by law.

83. Defendants are liable in damages to Christina Creamer for injury, pain, suffering and mental anguish; disfigurement; past and future medical expenses; past and future loss of wages; loss of earning capacity; court costs, and pre- and post-judgment interest, which occurred as a result of Defendants' conduct, acts, and omissions.

## **IX.** **JURY TRIAL**

84. The Plaintiff demands a jury trial against Defendants for all issues of fact in this cause, as guaranteed by the Arkansas and United States Constitution.

WHEREFORE, Plaintiff requests, upon service of Defendants identified herein and trial of her claims, Plaintiff be awarded all damages assessed by the trier of fact in her favor by judgement against the Defendants in a sum which will reasonably compensate the Plaintiff for her injuries and damages; that she be awarded her court costs; that she be awarded pre-judgment and post-judgment interest as allowed by law; and that she be entitled to such other and further relief, whether at law or in equity, to which she may be justly entitled.

             Respectfully submitted,

             **THE BUZBEE LAW FIRM**

             Anthony G. Buzbee
             Texas Bar No. 24001820
             (*Pro Hac Vice* admission pending)
             Cornelia Brandfield-Harvey
             (*Pro Hac Vice* admission granted)
             Texas Bar No. 24103540
             JPMorgan Chase Tower
             600 Travis, Suite 7300
             Houston, Texas 77002
             Telephone: 713.223.5393
             Facsimile: 713.223.5909
             tbuzbee@txattorneys.com
             cbrandfieldharvey@txattorneys.com
             www.txattorneys.com

**LANGDON★DAVIS, L.L.P.**

5902 Summerfield, Suite A
Texarkana, Texas 75503
Telephone: 903.223.3246
Facsimile: 903.223.5227

By: /s/ Brent M. Langdon
    Brent M. Langdon
    Ark. Bar No: 90042
    E-Mail: blangdon@ldatty.com

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused to be served the following names and addresses in compliance with the Federal Rules of Civil Procedure Rules 5(b)(2)(E) and 5(b)(3) on May 3, 2021, to-wit:

Jamie Huffman Jones
FIRDAY, ELDREDGE & CLARK, LLP
400 West Capitol Ave., Suite 2000
Little Rock, Arkansas 72201
jjones@fridayfirm.com

By: /s/ Brent M. Langdon
    Brent M. Langdon