IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CHRISTINA CREAMER                                                                          PLAINTIFF

V.                                    CASE NO. 3:21-CV-3024

BOONE COUNTY, ARKANSAS; JASON DAY, Individually,
and in his official capacity as Jail Administrator of
Boone County Jail; TIM ROBERSON, Individually, and
in his official capacity as as Sheriff of Boone County,
Arkansas; TURN KEY HEALTH CLINICS, LLC; and
JANE AND JOHN DOES I-V                                                                     DEFENDANTS

## OPINION AND ORDER

Currently before the Court are a Motion for Summary Judgment (Doc.42), Brief in Support (Doc. 43), and Statement of Facts (Doc. 44) filed by separate Defendant Turn Key Health Clinics, LLC ("Turn Key"). Plaintiff Christina Creamer, who is represented by counsel, failed to file a response to the Motion.

According to Ms. Creamer's First Amended Complaint (Doc. 8), Turn Key committed the tort of medical malpractice when it failed to provide her with adequate medical care while she was incarcerated in the Boone County Detention Center. She maintains that she broke her ankle in jail when she slipped in standing water after mopping her cell. Ms. Creamer is diabetic, a condition she maintains Turn Key and Boone County were aware of during her entire period of incarceration. She also contends that Turn Key and its staff knew that her diabetic condition would render any foot injury susceptible to infection and possible amputation if not treated in a timely manner.

Ms. Creamer asserts that she complained to the Turn Key nurse at the jail as soon as she injured her ankle, but she was never taken to the hospital nor seen by any doctor

1

while in jail. Soon after she was released, she presented herself at the North Arkansas Regional Medical Center and was examined by an orthopedic surgeon. By that time, she had developed an infection and ulcer in her injured foot that required amputation. Ms. Creamer contends the amputation was entirely preventable and would not have occurred but for Turn Key's negligent medical care.

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment must enter

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–33 (1986). The moving party is entitled to a judgment as a matter of law when the nonmoving party fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

To establish a claim for medical malpractice under Arkansas law, it is the plaintiff's burden to prove "[b]y means of expert testimony provided only by a medical care provider of the same specialty as the defendant" the following three elements: (1) "the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing"; (2) "that the medical care provider failed to act in accordance with that standard"; and (3) "that as a proximate result thereof the injured

2

person suffered injuries that would not otherwise have occurred." Ark. Code Ann. § 16-114-206(a)(1)–(3).

Turn Key supports its Motion for Summary Judgment with expert reports authored by Drs. John V. Adams, II and Robert W. Kleinhenz. *See* Docs. 44-3 & 44-4. Dr. Adams's report explains the appropriate standard of care for treating a foot injury like Ms. Creamer's and then opines that Turn Key and its personnel met that standard of care. Dr. Adams opines that Ms. Creamer suffered from a pre-existing condition called a "charcot deformity" that "was not related to trauma or acute injury but instead was rooted in her lengthy history of poorly controlled diabetes and neuropathy." (Doc. 44-3, p. 2). In Dr. Adams's view, "Turn Key staff promptly addressed both of Ms. Creamer's sick call requests and provided appropriate treatment within the standard of care" by applying "appropriate dressings" to her foot and by prescribing "antibiotics and ibuprofen." *Id.* at pp. 2–3. Finally, Dr. Adams believes that Ms. Creamer's foot amputation was caused by "longstanding problems noted in [her] medical records dating back years before the incarceration period," rather than the acts or omissions of Turn Key or its employees. *Id.* at p. 3.

Dr. Kleinhenz's expert opinion is much the same as Dr. Adams's. Dr. Kleinhenz explains that "Ms. Creamer's alleged fall did not cause the [charcot] deformity or her subsequent amputation." (Doc. 44-4, p. 2). He summarizes his conclusions as follows:

> Ms. Creamer was treated with antibiotics for a wound during her incarceration; however, that wound healed and did not merit mention when she presented to the ER. In the ER, she was diagnosed with the Charcot Deformity. Much later, due to her poorly controlled diabetes and continued smoking, she developed a subsequent wound on the top of her foot that became infected and led to the amputation. This wound was not present at the time she was in the jail. It is my opinion that this wound and her

3

underlying Charcot caused the amputation—not any conduct by the County or by Turn Key.

*Id.*

As Ms. Creamer did not respond to the Motion for Summary Judgment, she failed to submit any expert opinion evidence to counter Turn Key's. Thus, no genuine, material dispute of fact exists as to any of the elements of the claim for medical malpractice, and Turn Key is entitled to summary judgment as a matter of law.[1]

**IT IS THEREFORE ORDERED** that separate Defendant Turn Key Health Clinics, LLC's Motion for Summary Judgment (Doc.42) is **GRANTED**, and all claims against Turn Key are **DISMISSED WITH PREJUDICE**. The Clerk is directed to terminate Turn Key as a party to this action.

**IT IS SO ORDERED** on this 5th day of May, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[1] Although there are limited situations where expert opinion testimony is not required to prove the tort of medical malpractice under Arkansas law, *see Haase v. Starnes*, 323 Ark. 263, 268 (1996), there is no suggestion here that the applicable standard of care in Ms. Creamer's case is a matter of common knowledge such that expert testimony would not have been necessary at trial.